## T. F. NANNY v. M. B. VAUGHN ET AL.

Decided April 9, 1910.

**1.—Trial—Rejection of Evidence—Harmless Error.**

The rejection of testimony in a boundary case as to the location of a corner about which there was little or no dispute, and the location of which was not material to the main issue, if error at all would be harmless error.

**2.—Boundaries—Surveys and Field Notes—Presumption.**

The presumption of law is that surveys of public land were made by the surveyor and in the manner stated in the field notes approved by the General Land Office, but locating the boundaries on the ground is a matter for the jury to do under all the evidence.

**3.—Trial—Rejection of Charge.**

An appellant can not complain of the rejection of a requested charge when the verdict of the jury is in accordance with the instruction contained in said charge.

**4.—Boundaries—Excess.**

An excess of 1500 varas in a line 18 miles long is not so excessive as to affect the boundaries of a block of surveys of which said line is one.

Appeal from the District Court of Swisher County. Tried below before Hon. R. C. Joiner, Special Judge.

*Turner, Hendricks & Boyce,* for appellant.—The court erred in excluding the testimony of J. W. Flanagan because said testimony tended to establish the location and identity of the mound established by John Summerfield for the southwest corner of survey 347, block M6. Where the field notes of the original surveyor call for a mound on a base line run by him, from which mound and base line certain surveys and blocks of surveys were platted, and their location depends upon the position and location of such mound, and the location and identity of this mound is in dispute, evidence of general

reputation in the community may be received to establish the identity and location of the mound. Reeves v. Roberts, 62 Texas, 550; Stroud v. Springfield, 28 Texas, 649; Welder v. Carroll, 29 Texas, 318; Goodson v. Fitzgerald, 40 Texas Civ. App., 619; Matthews v. Thatcher, 33 Texas Civ. App., 133; Thatcher v. Matthews, 101 Texas, 122.·

Where the surveyor whose name is signed to the field notes did not in fact do the work on the ground, but adopted the work done by another surveyor who in fact assisted in making out the field notes, and the intention of both surveyors was to adopt the work done on the ground, the surveys must be constructed accordingly, and the original corner established by the surveyor who did the work in the field, from which the surveys are to be platted, will govern rather than the calls for contiguous surveys when the contiguous surveys are not marked on the ground and were not surveyed by the surveyor whose name is signed to the field notes. Lester v. Hays, 38 S. W., 52; Thompson v. Houston & T. C. Ry. Co., 68 Texas, 398; Castleman v. Pouton, 51 Texas, 84; Utley v. Smith, 32 S. W., 906; Duren v. Houston & T. C. Ry. Co., 86 Texas, 287; Jones v. Burgett, 46 Texas, 293.

If original corners can not be found, and a survey must be located by tying it on to contiguous surveys, then the court should tell the jury what contiguous surveys will control, and give them the rules of law governing the establishment of boundaries in such cases. Huff v. Crawford, 89 Texas, 214; Ayers v. Beaty, 5 Texas Civ. App., 491; Gerald v. Freeman, 68 Texas, 201; Wilkins v. Clawson, 37 Texas Civ. App., 162; Scott v. Pettigrew, 72 Texas, 321.

Where it is shown that a block of surveys was platted in the office from a base line having artificial objects called for by the original surveyor, such artificial objects will control as against an open prairie line on the opposite side of the block as well as against a monument or other object in another block not surveyed by the same surveyor. Woods v. Robinson, 58 Texas, 655; Thatcher v. Matthews, 101 Texas, 122; Ayers v. Beaty, 5 Texas Civ. App., 491; Gerald v. Freeman, 68 Texas, 201; Browning v. Atkinson, 37 Texas, 633; Johnson v. Archibald, 78 Texas, 96; Layton v. New York & Texas L. Co., 29 S. W., 1120; Atkins v. Goode, 78 Texas, 128; Wise v. Sayles, 38 Texas Civ. App., 229.

Where a surveyor in making out field notes calls for the corner of another block by mistake, such call will be ignored, and a call for an open prairie line of another block can not control course and distance from an established object on the ground from which the surveyor intended to locate the land. Boon v. Hunter, 62 Texas, 582; Oliver v. Mahoney, 61 Texas, 610; Bell v. Preston, 19 Texas Civ. App., 375; Holdsworth v. Gates, 50 Texas Civ. App., 347; Gilbert v. Harris, 109 S. W., 392; Keyser v. Meusback, 77 Texas, 64; Castleman v. Pouton, 51 Texas, 84; Galveston Company v. Tankersley, 39 Texas, 652.

*H. C. Randolph* and *L. W. Dalton,* for appellees.—If a survey can be located from its calls and those of its connections, it must be so

located, and resort can not be had to the calls of any other survey which called for it, and especially is this true where it is a junior survey. Therefore if the survey in M-6, except those on west, can be located from their own calls back tó M-8, they will be so located regardless of where those on the west line are located, as they are junior surveys and the others do not call for them, and to so locate them would be in harmony with Hutchinson's pipe corners and 9-T and S-2 would fit on to M-11 and the Ardrey would be where the jury put it, and it then became wholly immaterial where the west line surveys are. Thompson v. Langdon, 87 Texas, 254; Jamison v. New York & Texas Land Co., 77 S. W., 969; Chew v. Zweib, 29 Texas Civ. App., 311; Upshur County v. Lewright, 99 S. W., 441, 101 S. W., 1013; Missouri, K. & T. Ry. Co. v. Anderson, 36 Texas Civ. App., 121; Guill v. O'Bryan, 121 S. W., 593; Boardman v. Read, 6 Peters (U. S.), 328.

There was no dispute that there was a mound there and that their fence post was where the mound had been, and Damron identified it as did all the others, and it was for the jury to say what it represented. Summerfield, the surveyor who appellant said made it, was alive and testified in this case, and as to what this monument was considered by the community was not admissible because hearsay. Evidence of common repute as to where certain mounds and lines once were would have been admissible, but this was without challenge proven by Damron and others, and under these circumstances Flannagan's testimony that it was by common repute the corner of these surveys, was inadmissible. Stroud v. Springfield, 28 Texas, 649; Daggett v. Willey, 6 Fla., 482; Morris v. Harmer, 32 U. S., 554; Shutte v. Thompson, 82 U. S., 151; Morgan v. City of Mobile, 49 Ala., 349; Thoen v. Roche, 57 Minn., 135; Vanderslice v. Hanks, 3 Cal., 27; Westfelt v. Adams, 131 N. C., 379; Bland v. Beasley, 140 N. C., 628.

Blocks M-8 and M-6, purported to have been surveyed by Hedrick and Summerfield, nowhere appears in the field notes and only by deposition in this case, and the presumption is that Hedrick did his duty and surveyed them and they being contiguous corners the court properly submitted the issue as to whether Hedrick did the work or not, and if they found original corners in them to adhere to them, and if not then to construct to contiguous surveys, and submitted, too, the issue as to his adopting Summerfield's corners of 346 and 347. Stafford v. King, 30 Texas, 257.

Where a survey or series of surveys call for certain lines, corners and connections, these can not be controlled by parol proof of a survey entirely inconsistent and repugnant to the calls of the grant. 9T, 10T were put in by Summerfield in the office, and called for M-6 and M-11 and must go where M-6 and M-11 are properly located and not where he put a monument in 1876, intending that they should be in harmony with the monument, the question being where is the proper locality of M-6 and M-11 and not where the surveyor wanted them. And especially is this true when Summerfield made no reference to the monuments in his notes for the T-blocks. The court then properly charged the jury that they should

locate M-6, as Hedrick (he was the surveyor, not Summerfield) intended it should lie, and then put the other blocks on it and determine where the Ardrey was. Anderson v. Stamps, 19 Texas, 460; Masterson v. Ribble, 34 Texas Civ. App., 270.

In the construction of surveys those calls will be adhered to which are most material and certain, and those rejected which were made by mistake and conjecture, and that construction will prevail which is most consistent with the intention apparent on the face of the grant, and if any calls are rejected, those must be rejected which lead to confusion, and those accepted which most nearly harmonize all the calls, having in view the configuration of the same, quantity and everything tending to most nearly conform to the intention. Lyon v. Waggoner, 37 Texas Civ. App., 205; Sellman v. Sellman, 73 S. W., 48; Hamilton v. Blackburn, 43 Texas Civ. App., 153; Stafford v. King, 30 Texas, 257; Davidson v. Killen, 68 Texas, 406; Blackwell v. Coleman, 94 Texas, 220.

CONNER, CHIEF JUSTICE.—We find no reason to disturb the judgment in this case. Appellant claims sections 21 and 22, block S-2, and section 91, block M-11, and these sections were awarded to him by the judgment below. He makes no claim to the Ardrey survey owned by appellee, which undisputedly lies south of the south line of said sections 21 and 22, the call for the N. E. corner of the Ardrey being for the S. E. corner of section 21.

The disputed question is as to the proper location of said sections 22 and 21. It appears that blocks 10T, 9T and S-2 were office surveys, and if sections 21 and 22 be located, as appellant contends should be done, by calls for course and distance alone from the well identified corner fixed by John Summerfield on the west boundary line of block M-6, adopted for the S. W. corner of section 347 and N. W. corner of section 346 in said block M-6, then said sections 21 and 22 will lie south and west from the S. E. corner of section 91, block M-11, which is made the beginning corner of section 21, and so extended would overlap and cover appellee's Ardrey survey; but we feel unable to say that the jury were unwarranted in finding, as they evidently did, that the calls for section 91, in block M-11 should be given effect. The evidence warrants the inference that in plotting blocks 10T, 9T, S-2 and M-11 the surveyor who made out or adopted the field notes of these several blocks had in mind and was controlled by other lines and objects as well as by the common corners given of sections 347 and 346, block M-6. The north line of block M-11 distinctly calls for the south line of block M-8 and block M-6. The N. W. corner of block M-8 and N. E. corner of block 2Z is distinctly fixed by the evidence at a well identified corner constituting the S. W. corner of section 208, block 6 and the S. E. corner of block B-5, this corner being nine miles south of the well identified N. E. corner of block B-5. The field notes of block M-8, signed by Hedrick and filed and approved in the Land Office, call for mounds all along the west line of block M-8, and the surveys along the east line of M-6 likewise call for the same mounds, it being the evident intent of the locator of these blocks that blocks 6, B-5, 2Z, M-8 and M-6 should

adjoin and cover all of the territory included by the outer calls, and the testimony of Hutchinson, who surveyed the west line of M-8 and the east line of M-6, authorizes the inference that along this line he found the original mounds called for in the field notes of these two blocks; that he fixed therein, allowing for an excess found, iron pipes, thus definitely fixing upon the ground the south lines of block M-8 and block M-6, and by calls for course and distance fixed the south line of block M-11, fixing as the S. E. corner of said section 91, block M-11, an iron pipe, and the jury thus evidently fixed the beginning corner of appellant's section 21, block S-2, at the S. E. corner of section 91, block M-11, for which the field notes in section 21 call.

While the testimony of Summerfield fixes the west line of block M-6, we do not think it necessarily follows therefrom that the east line of this block is to be drawn away from block M-8 for which it calls. The proof tends to show that the eastern tiers of surveys in block M-6 were located before those along the western line, and if the eastern line of the block can be fixed with certainty by the calls for adjoining blocks on the north and east, the surveys on the east should be established in accordance with such calls, regardless of the fact that to go to the western line of the block as established by the Summerfield objects would create an excess. It is not contended that the excess is more than about fifteen hundred varas, which is not so excessive in a line eighteen miles long as to require the rejection of all calls along the eastern and northern lines of the block. Besides, the evidence of Summerfield as a whole, we think, warrants the inference that in plotting blocks 10T, 9T, M-11 and S-2, other lines and calls than the calls for the long base line of Summerfield were distinctly had in mind and considered; for instance, he states that from the mound on his base line, now known as the S. W. corner of survey 347, block M-6, McClelland and others ran a line east towards the west line of block M-8; that he then ran in the various courses and distances stated by him and finally connected with McClelland and others, and that at least ten miles of the line east from the S. W. corner of 347 was adopted, and he nowhere states that other calls in these blocks were disregarded.

What we have said we think will dispose of many of the assignments of error, but we will refer to some of them briefly. We think the rejection of Flannigan's testimony, complained of in the first assignment, immaterial for the reason that there seems to be but little if any dispute about the location of the S. W. corner of 347, block M-6; the issue and the only issue material as we conceive it under the testimony was whether surveys 21 and 22, block S-2, should be located by calls for course and distance alone from the corners mentioned, or whether the jury might locate these surveys by their calls for sections 91 and 92, block M-11, and other evidence to which we have referred.

Nor do we think the sixth and seventh clauses of the court's charge erroneous in ignoring the part Summerfield took in making out the field notes of the surveys in blocks M-6, 9T, 10T, M-11 and S-2. The field notes and surveys purport to have been made by Hedrick,

and the presumption of law is that the surveys were made as stated in the field notes approved by the General Land Office. It would not do therefore for the court to assume that Summerfield's testimony indisputably established the fact, as appellant contends, that the location of blocks 10T, 9T, M-11, and S-2 are to be controlled by calls for course and distance alone from the established common corners of 347 and 346, block M-6. Moreover, as we have before had occasion to mention, Summerfield's own testimony tends to show that the blocks named were platted not alone upon the Summerfield base line, but also from other ascertainable lines and corners.

If paragraph nine of the court's charge, to which objection is made in the twelfth assignment, is erroneous, but which we do not think, the error was invited by appellant's special charge No. 5. The jury by their verdict did the precise thing that appellant's special charge No. 7 would have instructed them to do had the court given it; its rejection, therefore, can not be material. By appellant's charges Nos. 8, 10, 11, mentioned in the fifteenth, seventeenth and eighteenth assignments of error, appellant sought to authorize the jury to reject calls other than course and distance from the west line of block M-6 as fixed by the testimony of Summerfield. This we think would have been erroneous.

We conclude that all assignments of error should be overruled, and the judgment affirmed.

*Affirmed.*